with the terms of the policy, it could not be enforced. But, after coming to that conclusion, the court said: "Of course, there might be facts estopping the company from insisting upon the condition of prepayment, but the allegations of the complaint tending in that direction were not proved." Here, as has been above indicated, facts were alleged in the complaint, and proof was given in support of such allegations, which justify the conclusion that the company is estopped from insisting upon the condition of prepayment; or, rather, that such condition, under the circumstances presented here, has been waived. The agent had the power, by his acts, to effectuate a waiver of the condition, notwithstanding the provision in the policy that "no person had the power to give credits, except the president, vice president, comptroller, or secretary of the company; and they only in writing." The act of the agent in making the agreement which he did with the insured, and under which the policy was delivered to him, was effective, in my opinion, under the authorities, to give him credit for this premium, and to constitute a waiver of the provision for its advance payment. Skinner v. Norman, 165 N. Y. 565–569, 59 N. E. 309; Van Schoick v. Insurance Co., 68 N. Y. 434, 439; Stewart v. Insurance Co., 155 N. Y. 257, 49 N. E. 876; Insurance Co. v. Schlink, 175 Ill. 284, 51 N. E. 795; 1 May, Ins. (3d Ed.) § 135, note 2; 16 Am. & Eng. Enc. Law (2d Ed.) 942. I think the plaintiff is entitled to judgment for the amount of the policy, less the amount of the first premium, with interest from the date of the receipt by defendant of proofs of death, besides costs.

Judgment for plaintiff, with costs.

---

(34 Misc. Rep. 694.)

### CHAVIAS v. DRY DOCK, E. B. & B. R. CO.

(Supreme Court, Trial Term, New York County. May, 1901.)

STREET RAILROADS—INJURY TO CHILD ON TRACK.
　　Where, in an action against a street-railway company to recover for injuries to a minor child, the evidence of seven disinterested witnesses clearly showed defendant guilty of no negligence, and conflicted with the weak and indefinite testimony of four witnesses for the plaintiff, a verdict for plaintiff will be set aside, as against the weight of evidence.

Action by Mary Chavias, by her next friend, against the Dry Dock, East Broadway & Battery Railroad Company. Motion to set aside verdict in favor of plaintiff granted.

D. P. Hays, for plaintiff.
John M. Scribner, for defendant.

ANDREWS, J. This is a motion made upon the judge's minutes to set aside a verdict in favor of the plaintiff for the sum of $3,000, which was rendered by the jury on the trial of this action on the 14th day of March, 1901.

1. Did the evidence establish the absence of any negligence on the part of the plaintiff's mother? The evidence given on behalf of the plaintiff on this point is as follows: The mother of the plaintiff had been sitting upon the sidewalk with the child upon her lap in

front of the premises in which she lived. She left the child seated upon a chair, with an injunction not to leave it, and went across the street to get some ice. While she was gone the little child started to cross the street, and met with the accident which is the subject of this action. In my opinion, this was negligence on the part of the mother, which contributed, in a very material degree, to the accident. If it was necessary or desirable for her to cross the street, the carriage way of which was only 30 feet in width, she might easily have taken the child with her, or she might have called her older child to take care of the plaintiff, whom she described as a mere baby, or might have put the baby in the apartment where the elder girl was at work, so that the latter might have kept watch of her baby sister. The mother was familiar with the operation of the cars of the defendant, and knew that they passed through the street frequently, and for her to leave her little girl alone in the chair on the sidewalk, with merely an admonition to the child not to move, was an act of gross negligence. The case is entirely different from those in which it has sometimes been held not to be negligent for residents in tenement-house districts to allow their small children to play in the streets, because they had no nurses or other persons to look after such children. However, it must be conceded that opinions might differ upon this question, and I should not feel justified in setting aside the verdict as against the weight of evidence, on the ground that the mother's negligence contributed to the accident.

2. Did the evidence establish that the accident was due to the negligence of the driver of the defendant? The claim made on behalf of the plaintiff as to the manner in which the accident happened is as follows: While the mother was gone the little child started to cross the street, and when it reached the middle of the track was attracted by the outcry of several people, and turned around and started to return. At this time the horses attached to the car were some feet away from the child, and they were going rapidly towards it. Before the child got off the track it was struck by the horses, who had not slackened their speed, and, the driver having done nothing to avert the accident, the child was knocked down by the horses, and one of the front wheels of the car ran against or upon the child's leg. To support this view of the case, plaintiff called the following five witnesses: (1) Lena Chavias, the plaintiff's mother. She did not claim to have seen the accident. She testified that she placed the child on a chair, and told her not to move, and then went over to the stable on the opposite side of the street to get some ice. She said that the next thing she knew was, when she got back, her "dead" child was placed in her arms, and she fainted away. She was a very unintelligent witness. (2) Sarah Cohen. She testified that she was on the sidewalk before the accident, and that the car was coming fast. But her manner of testifying was not such as to inspire confidence as to the accuracy of her recollection. (3) Evangeline Chavias, the plaintiff's 13 year old sister. She was a bright child, but testified as though she had framed a story or had been taught one, and was apparently determined to make out a case for the plaintiff if she could. Her testimony was in the highest degree

improbable. She said that she was in her mother's kitchen scrub-
bing the floor. The kitchen was an inner room, having no window
opening into the street, but she claimed to have heard an outcry
in the street, which induced her to go into the front room and look
out of the window. She said that she saw her baby sister in the
middle of the railroad track, and the car horses at a distance of
15 feet away, coming fast. She ran back to the kitchen, put on
her waist, and then descended the stoop of the house to the street.
She said that all this occupied three minutes, according to her esti-
mate of the time, and that when she got to the street the car was
still in motion, and the plaintiff in front of the left fore wheel.
This testimony was absurd, in view of the testimony given on be-
half of the defendant, to the effect that a car going at four miles an
hour travels 352 feet per minute, or 1,056 feet in three minutes;
that, at five miles an hour, a car would go 1,320 feet in three min-
utes; and, at six miles an hour, 1,584 feet in three minutes. (4)
Moritz Freedman, a push-cart peddler. He testified that he was on
the sidewalk, and that his push cart was in the street; that the
car horses were going as street-car horses usually go, on a jog
trot; that he saw a small child in the middle of the street, 12 feet
and 11 inches, or thereabouts, in front of the horses; that he hol-
laed, "Whoa! whoa!" and several other people hollaed, but "the
child was under the wheel already." This witness was not of ·a
very high order of intelligence. (5) Henry Schwell. This witness
testified to having a cataract on both eyes, with which he had been
afflicted for several years; that his eyesight was bad. He testified
that he went up the stoop of No. 61 Clinton street to call on Mrs.
Cohen (a previous witness), found her in her room in that house,
and she was still there in her apartment when he left. He .said
that he came down, and stood talking on the street, and then saw
the infant plaintiff standing in the center of the track, with the
car horses 15 or 20 feet away, the horses being then on a trot. He
said there was an outcry, and the car was stopped so suddenly that
the child was picked up in front of the forward wheel. The testi-
mony given on behalf of the plaintiff, even when uncontradicted,
presented a very weak case. To meet the testimony so given on. be-
half of the plaintiff, the defendant called nine witnesses, all of
whom, except the driver and conductor of the car, were absolutely
disinterested. Five of these witnesses were passengers on the car,
and all of them were persons of intelligence, and occupied positions
in which they could see much better than the plaintiff's witnesses
how the accident happened. Hay was a police detective, and was
seated on the left-hand side of the car, in a position where he could
see through the front window and through the front side windows
of the car. Daniels was a carpenter, who stood on the front plat-
form of the car. Kestner was a stonecutter, who was also on the
front platform of the car. Bruist was also·standing on the front
platform. Schwager was a young man who was in the employ of a
coal dealer, and stood on the left-hand side of the driver. There
were also two disinterested witnesses called by the defendant who
were not on the car. One was Dr. Duchman, who was a druggist,

into whose store the plaintiff was taken after the injury, and who saw the accident, being at the time on the westerly sidewalk of Clinton street. The other was Martin, who was seated on the easterly side of Clinton street, in front of the stable No. 62, and who also saw the accident. The defendant also called the driver, Lestrange, and the conductor, Sullivan. These nine witnesses flatly contradict the testimony given by the plaintiff's witnesses as to the manner in which the accident happened. Their testimony was, in substance, as follows: That the horses were going at a slow jog; that the plaintiff was standing on the side of the street two or three feet from the mud gutter; that she stood there alone, and did not attempt to cross the street until the horses' heads had passed the position where she stood, when she suddenly ran out towards the track; that the driver immediately put on his brake, swung his team to the right, and did everything in his power to avert the accident; that the child struck against the whiffletree or dashboard of the car, and was thrown down, but that the car was stopped so quickly that, while one of the front wheels came up against the child's leg, it did not pass over it. These witnesses differed in some minor matters, as witnesses who are telling the truth usually do. But, leaving out of consideration the testimony of the conductor and driver, here were seven intelligent, wholly disinterested, witnesses, who, so far as appeared, had no possible motive for not telling the truth; who were in positions where they could plainly see how the accident happened; and whose testimony, if true, shows that there was no negligence whatever on the part of the driver. In my opinion, the verdict was against the overwhelming weight of evidence, and ought not to stand; for the jury must have been influenced either by prejudice against the defendant, or by sympathy for the unfortunate child, who was seriously injured. The motion to set aside the verdict will be granted; but, under the authorities, it must be on condition that the defendant pay all costs of the trial.

Motion granted, on condition that defendant pay all costs of trial.